# Exhibit A





# GENERAL AGREEMENT OF INDEMNITY

WHEREAS, AI Contracting, LLC; 198 Hickory Springs, LLC; Fields Chapel Properties, LLC; Complete Site, LLC; with Jason R. & Tara L. Moody; each individually

(hereinafter called the Principal) has or may hereafter require suretyship upon certain bonds or obligations of suretyship and has applied or may hereafter apply to Granite Re, Inc. (hereinafter called the Company) to execute such instruments as surety; and the Company expressly requires the execution of this Agreement, and relies upon same, as part of the consideration for the Company's execution of all such bonds.

NOW, THEREFORE, should the Company execute, have executed, or procure the execution of the suretyship, for which application is now pending, or which may have been heretofore or may be hereinafter applied for, or other suretyship in lieu thereof, or in lieu of suretyship now outstanding, or in connection therewith, the undersigned, hereinafter called the Indemnitor, does (if there be more than one Indemnitor, they jointly and severally and for each other do), in consideration thereof, hereby undertake and agree:

1. That the Indemnitor will pay, or cause to be paid, to the Company, as and when each and every such bond or obligation is executed, the premium therefor in accordance with the regular scheduled rates of the Company then in force, and annually thereafter (except when the initial premium is scheduled as a term premium) pay to the Company the annual premium therefor in accordance with such rates until the Indemnitor shall serve upon the Company competent, written, legal evidence satisfactory to the Company of its final discharge from such suretyship and any and all renewals and extensions thereof.

2. That the Indemnitor will perform all the conditions that each said bond or obligation, and any and all alterations, modification, renewals, continuations, and extensions thereof, and will at all times indemnify, exonerate, and save the Company harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, expense, suit, order, judgment and adjudication whatsoever, payable on demand of the Company whether actually incurred or not, and any and all liability therefor sustained or incurred by the Company by reason of having executed or procured the execution of said bonds or obligations; that Indemnitor shall place the Company upon demand in funds, whether or not the Company has made payment for any claim, demand, liability, loss, cost, charge, counsel fee, or expense; and whether or not the Indemnitor has previously provided collateral security to the Company to secure the Company as the Company demands in its sole discretion; and in case the Indemnitor requests the Company to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Company place it in funds sufficient to defray all expenses and all judgments that may be rendered therein; that the Company shall at all times have the right but not the obligation to retain the counsel of its choice to defend the Company from any claim, demand, liability, or suit brought against the Company on any bond or against any collateral security, contract funds, trust funds, or liens, and to prosecute any action relating thereon the Company's behalf, and the cost of retaining such counsel shall be included within the Indemnitor's obligation to indemnify, exonerate, and save Company harmless.

3. That the suretyship is for the special benefit of the Indemnitor and the Indemnitor's property now owned or hereafter acquired and the income and earnings thereof, from all of which the Company shall be entitled to indemnity; and the Indemnitor represents that the Indemnitor is specially and beneficially interested in the subject of any such suretyship, in the suretyship required, and the continuation thereof.

4. That the Company shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from its suretyship, and in the absence or default of its Indemnitor the Company may, at its option, exercise all rights of said Indemnitor, and should it make any payment, shall have every right and remedy of the Indemnitor for the recovery of the same.

5. That the Company shall have the right in its sole discretion to pay, settle or compromise any demand, claim, cause of action, complaint, or charge of the character enumerated in this Agreement; and payment by the Company shall be final and binding upon the Indemnitor's liability to the Company. The Company shall have the right to utilize any collateral security to mitigate its loss, or to otherwise maintain collateral security for other exposure, claims, and liability, but in all events the Indemnitor shall immediately provide full indemnity to the Company for the sum of all payments remitted by the Company in settlement of all claims, expenses, or charges.

6. That this agreement shall not, nor shall acceptance by the Company of payment for its suretyship, nor agreement to accept, nor acceptance by it at any time of other security, nor assent by it to any act of the Indemnitor named in any suretyship obligation, or of any person acting on behalf of the Indemnitor, in any way abridge, defer or limit the Company's right to be subrogated to any right or remedy, nor limit nor abridge any right or remedy which the Company otherwise might or may have, acquire, exercise or enforce, nor create any liability on the part of the Company which would not exist were this agreement not executed.

7. That the liability of the Indemnitor shall not be discharged by any change in penalty, amount of terms of any bond or obligation executed on the security hereof, or by any change in the named Obligee therein, or by any and all alterations, modifications, renewals, continuations, and extensions thereof; and the Company is hereby authorized to correct any mistakes in and to execute any substitutes for said bonds or obligations with the same or different conditions, provisions, amounts and named Obligees, it being hereby agreed that this instrument shall in all its terms apply accordingly. The Company is hereby authorized to attach hereto a copy of any bond or obligation secured by this agreement, and to fill up any blanks left herein or therein, and to correct any errors in filling up any such blanks or in the descriptions of said bonds or obligations.

8. That in the event any such bond shall be given in connection with a contract of the Principal or Indemnitor for construction work, the Principal and Indemnitor hereby dedicate all plant and material owned or acquired by it and used for the performance of such contract to the performance of the same



EXHIBIT A




and further agree that in the Event of Default, defined as (a) any breach, default, or termination of contract claimed by an obligee; (b) any failure to timely and fully satisfy payment liabilities or obligations to subcontractors, suppliers, materialmen, laborers, or tax authorities; (c) any failure to satisfy or perform any condition of bond or contract, including this Agreement; (d) any assignment for the benefit of creditors, filing of bankruptcy proceedings, or appointment of receiver; (e) the death, disappearance, felony conviction, or incompetency of the Principal; or (f) any failure to maintain the financial condition of the Principal or Indemnitor within the requirements of the Company's underwriters, to assign, and hereby does assign to the Company, all right, title, and interest of the Principal and Indemnitors in: (a) all tools, plant, equipment, inventory, and materials of every nature and description, including materials purchased for or chargeable to such contract, which may be in process of construction or storage elsewhere, or in transportation to said site; (b) all accounts receivable and contract rights, including rights and claims to earned and deferred contract funds and balances, including retainages, whether arising from bonded contracts or unbonded contracts; (c) all of the Principal's rights in and to all subcontracts and purchase orders which may be entered into, and the materials embraced therein appertaining to said contracts; and (d) all actions, causes of action, and demands of whatsoever nature that the Principal has, or may have, against any subcontractor, laborer, or materialman, or their surety in connection with any contract relating to any bond of the Company; and the Principal and Indemnitor further agree the said Company shall be subrogated to all rights and properties of the Principal and Indemnitor in such contract, including deferred and reserved payments, current and earned estimates and final payments, and any and all monies and securities that may be due and payable at the time of such default on said contract or any other contract of the Principal and Indemnitor or any one or more on which the Company may be or may become surety, or on account of extra work or materials supplied in connection therewith, or that may thereafter become due and payable on account of said contract or any other contract on which the Company is or may become surety. The Principal and Indemnitor hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant, or other instrument made or issued in payment of any monies due on such contracts and to disburse the proceeds thereof.

9. That upon execution of bonds by the Company as aforesaid, the Indemnitor covenants and agrees that any and all contract funds, balances, and payments received for or on account of any contract bonded by the Company are trust funds in which the Company has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the bonds are trust funds, whether in the possession of the Indemnitor or otherwise, for the benefit and for the payment of all such obligations in connection with any such contract or contracts which the Company would be liable. It is expressly agreed that the use of trust funds for any purpose other than the rightful payment of labor, material, and services prosecuted in the performance of bonded contract work shall be deemed fraudulent and shall constitute a determinative basis for objection to any discharge of liability otherwise accorded by a bankruptcy petition naming the Principal or Indemnitor.

10. That the Company is authorized and empowered to guarantee loans and to advance or lend to the Principal or Indemnitor any money which the Company in its sole discretion may deem advisable or necessary for the purpose of any contracts referred to by the Company's bonds, or otherwise; but that in no event shall the Company be obligated to use either its own funds or collateral provided to the Company by the Principal, the Indemnitor, or any third-party to fund the Principal or Indemnitor to complete any contract, to sustain any operations, or to discharge any obligations of the Principal or Indemnitor. All money so loaned, advanced, or guaranteed, as well as costs, attorneys' fees and expenses associated therewith, unless repaid when due with legal interest, shall be deemed a loss by the Company for which the Indemnitor shall be responsible, notwithstanding that said money or any part thereof is not so used by the Principal or Indemnitor.

11. That to secure the obligations under this Agreement, the Indemnitor hereby grants to the Company a security interest in, and lien on, all of the Indemnitor's accounts, accounts receivable, financial institution deposits, machinery, equipment, contract rights, causes of action, inventory, securities, investments, promissory notes, insurance proceeds, and intangibles of whatsoever nature. The Indemnitor authorizes the Company to file any financing statement and amendments to memorialize the Company's security interest. This Agreement shall constitute a Security Agreement and also a Financial Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction where such Code is in effect and may be so used by the Company without in any way abrogating, restricting, or limiting the rights of the Company under this Agreement or under law or equity.

12. That in the event of any breach, delay or default asserting by any obligee in any said bonds, or asserting by the Company occasioned by the Indemnitor's breach or default in any obligation of this Agreement, or in the event the Principal or Indemnitor has suspended or ceased work on any contract or contracts covered by any said bonds, or failed to pay obligations incurred in connection therewith, or in the event of death, disappearance, Indemnitor's conviction of a felony, incompetency, insolvency, or bankruptcy of the Indemnitor, or the appointment of a receiver or a trustee for the Indemnitor or the property of the Indemnitor or in the event of an assignment for a benefit of creditors of the Indemnitor, or if any bankruptcy proceedings are taken by or against the Indemnitor, or should reorganization or arrangement proceedings be filed by or against the Indemnitor, or if any action is taken by or against the Indemnitor under the insolvency laws of any state, possession, or territory in the United States, or if the Company in its sole discretion deems action is necessary or desirable, the Company shall have the right, at its option and its sole discretion and is hereby authorized with or without exercising any other right or option conferred on it by law, or in the terms of this Agreement to take possession of any part or all of the work under any contract or contracts by covered by any bonds and to assert the Company's claim rights to contract balances held by an obligee or other third-party and the Indemnitor shall pay to the Company all losses and expenses so incurred.

13. That at any time, and until such time as the undertaking of the Company under any and all bonds is terminated, the Company shall have the right of reasonable access to the books, records and accounts of the Indemnitor; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts, and the financial and credit standing of the Indemnitor in accordance with the Fair Credit Reporting Act and statutory equivalents.

14. That the Company may decline to execute any bond and the Indemnitor agrees to make no claim to the contrary in consideration of the Company receiving this Agreement; and if the Company shall execute a Bid or Proposal Bond, the Company shall have the right to decline to execute any and



EXHIBIT A




all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability of the Indemnitor that may arise by reason of having executed the Bid or Proposal Bond.

15. That the Indemnitor hereby waives notice of the execution of said bonds and of the acceptance of this Agreement, and the Indemnitor hereby waives all notice of any default, or any other act or acts giving rise to any claim under said bonds, as well as notice of any and all liability of the Company under said bonds, and any and all liability on their part hereunder, to the end and effect that the Indemnitor shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

16. That in the event of any claim or demand being made by the Company against Indemnitor, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and the Indemnitor hereby expressly waives the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consents to any settlement or composition that may hereafter be made.

17. That all the terms and conditions of this agreement shall stand for the protection of any co-surety, any reinsuring company or any other surety procured by the Company, whether the Company does or does not execute or retain any portion of any such bond or obligation.

18. That separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

19. That the Indemnitor shall continue to remain bound under the terms of this Agreement even though the Company may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitor, accepted or released other agreements of Indemnity or collateral in connection with the execution or procurement of said bonds, from the Indemnitor or others, it being expressly understood and agreed by the Indemnitor that any and all other rights which the surety may have or acquire against the Indemnitor and/or other under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Company under this Agreement.

20. That the liability of the Indemnitor shall extend to any and all bonds executed on behalf of Principal and/or Indemnitor before, simultaneously, and/or after the effective date of this Agreement. The Indemnitor acknowledges that the execution of this Agreement is consideration for the Company's execution of the bonds before, simultaneous with, and/or after the date of this Agreement and that the Company requires and relies upon same.

21. That application to the Company to execute or procure any such bond or obligation of suretyship may be made by the Indemnitor or the President, Vice President, Secretary, Treasurer, General Manager or any other Officer, Agent or Employee of the Indemnitor. Such applications, whether made on forms supplied by the Company or by letter, by email, by telephone, or by personal interview, may be regarded as sufficient and ample authority for the Company to execute or procure any such bond or obligation of suretyship.

22. That in case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Indemnitor that the rights, powers, and remedies given the Company under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the surety may have or acquire against the Indemnitor or others whether by the terms of any other agreement or by operation of law or otherwise.

23. That the Indemnitor hereby irrevocably nominates, constitutes, appoints and designates the Company as the Indemnitor's attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Indemnitor assigned, transferred and set over to the Company in this Agreement, and in the name of the Indemnitor to make, execute, and deliver any and all additional or other assignments, documents, or papers deemed necessary and proper by the Company in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Company under all other provisions of this Agreement. The Indemnitor hereby ratifies and confirms all acts and actions taken and done by the Company as such attorney-in-fact.

24. That this Agreement may be terminated by the Indemnitor upon twenty days written notice sent by registered mail to the Company at its home office at 14001 Quailbrook Drive, Oklahoma City, OK 73134, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitor as to bonds that may have been previously executed. The Indemnitor acknowledges that this Agreement is intended to apply to all bonds executed by the Company on behalf of any or all Indemnitors named herein, from time to time, and over an indefinite period of time, whether or not supplemented by other agreements of indemnity, and shall remain in full force and effect until this Agreement is cancelled in accordance with the terms of this paragraph.

25. That if any part of this Agreement is declared invalid or unenforceable by a court of competent jurisdiction, this Agreement as a whole shall not be deemed invalid or unenforceable, and the remaining provisions of this Agreement shall remain in full force and effect.

26. That the word "Indemnitor" or pronouns referring to said word appearing in this agreement, whether singular or plural, are to be construed as referring to the Indemnitor, though the Indemnitor be one or more individuals, partnerships, associations, corporations, limited liability companies, joint ventures, trusts, or other legal entities.



**EXHIBIT A**





27. That this Agreement may not be amended, changed, or modified orally. No amendment, change, or modification to this Agreement shall be effective unless made by written Endorsement executed by the Indemnitor and the Company with specific reference to this Agreement and attached hereto.

28. That this Agreement applies to bonds, undertakings and other writings obligatory in the nature of a bond, written by the Company on behalf of or for the benefit of any of the undersigned Indemnitors and any and all of their wholly or partially owned subsidiary companies, successive subsidiaries whether direct or indirect, divisions or affiliates, partnerships, joint ventures or co-ventures or limited liability companies, or other entities, in which any of the undersigned Indemnitors, their wholly or partially owned subsidiary companies, successive subsidiaries whether direct or indirect, divisions or affiliates may have an interest or participation whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired. This Agreement and the Indemnitors' obligations hereunder may not be assigned without the prior written consent of the Company.

IN WITNESS WHEREOF, we have hereunto set our hands and seals and delivered in presence of:

SIGNED, and sealed and delivered this 21st day of June, 2019

Name: A1 Contracting, LLC

By: [signature] Owner/President
Jason R. Moody Member

STATE OF: Georgia

COUNTY OF: Cherokee

On this 25th day of July, 2019 the foregoing Agreement was acknowledged before me by Jason R. Moody the Member of A1 Contracting, LLC on behalf of said A1 Contracting, LLC

Before me personally came Jason R. Moody to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

[signature]
Notary Public
Commission Expires 12/18/21 (Affix Notary Seal)

JAVARRI KLINE NOTARY PUBLIC GEORGIA EXPIRES December 18, 2021 CHEROKEE COUNTY

GR0614-35



EXHIBIT A

Name: 198 Hickory Springs, LLC

By: Jason R. Moody Owner/President Member

STATE OF: Georgia

COUNTY OF: Cherokee

On this 25th day of July, 2019 the foregoing Agreement was acknowledged before me by Jason R. Moody the Member of 198 Hickory Springs, LLC on behalf of said 198 Hickory Springs, LLC

Before me personally came Jason R. Moody to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

Notary Public

Commission Expires 12/18/21 (Affix Notary Seal)

JAVARRI KLINE NOTARY EXPIRES GEORGIA December 18, 2021 PUBLIC CHEROKEE COUNTY

Name: Fields Chapel Properties, LLC

By: Jason R. Moody Owner/President Member

STATE OF: Georgia

COUNTY OF: Cherokee

On this 25th day of July, 2019 the foregoing Agreement was acknowledged before me by Jason R. Moody the Member of Fields Chapel Properties, LLC on behalf of said Fields Chapel Properties, LLC

Before me personally came Jason R. Moody to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

Notary Public

Commission Expires 12/18/21 (Affix Notary Seal)

JAVARRI KLINE NOTARY EXPIRES GEORGIA December 18, 2021 PUBLIC CHEROKEE COUNTY



**EXHIBIT A**

Name: Complete Site, LLC

By: _______________ Owner/President
Jason R. Moody, Member

STATE OF: Georgia

COUNTY OF: Cherokee

On this 25th day of July, 2019 the foregoing Agreement was acknowledged before me by Jason R. Moody the Member of Complete Site, LLC on behalf of said Complete Site, LLC

Before me personally came Jason R. Moody to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

_______________
Notary Public
Commission Expires 12/18/21 (Affix Notary Seal)

JAVARRI KLINE NOTARY PUBLIC GEORGIA EXPIRES December 18, 2021 CHEROKEE COUNTY

---

Name: _______________

By: _______________

Address: _______________

City: _______________ State: _____ Zip: _______

Tax ID#: _______________

STATE OF: _______________

COUNTY OF: _______________

On this ____ day of _______________, ________ the foregoing Agreement was acknowledged before me by _______________ the _______________ of _______________ on behalf of said _______________

Before me personally came _______________ to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

_______________
Notary Public
Commission Expires _______________ (Affix Notary Seal)

---



EXHIBIT A

Name: ______________________

By: ______________________

Address: ______________________

City: __________ State: ____ Zip: ______

Tax ID#: ______________________

STATE OF: ______________________

COUNTY OF: ______________________

On this ____ day of ______________, ________ the foregoing Agreement

was acknowledged before me by ____________________ the

____________________ of ______________________

on behalf of said ______________________

Before me personally came ______________________
to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

______________________

Notary Public
Commission Expires ______________ (Affix Notary Seal)

---

Name: ______________________

By: ______________________

Address: ______________________

City: __________ State: ____ Zip: ______

Tax ID#: ______________________

STATE OF: ______________________

COUNTY OF: ______________________

On this ____ day of ______________, ________ the foregoing Agreement

was acknowledged before me by ____________________ the

____________________ of ______________________

on behalf of said ______________________

Before me personally came ______________________
to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

______________________

Notary Public
Commission Expires ______________ (Affix Notary Seal)

---



**EXHIBIT A**

Name: ______________________

By: ______________________

Address: ______________________

City: __________ State: _____ Zip: _______

Tax ID#: ______________________

STATE OF: ______________

COUNTY OF: ______________

On this ____ day of ____________, ______ the foregoing Agreement was acknowledged before me by ______________ the ______________ of ______________ on behalf of said ______________

Before me personally came ______________ to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

______________________

Notary Public
Commission Expires ____________ (Affix Notary Seal)

---

Name: ______________________

By: ______________________

Address: ______________________

City: __________ State: _____ Zip: _______

Tax ID#: ______________________

STATE OF: ______________

COUNTY OF: ______________

On this ____ day of ____________, ______ the foregoing Agreement was acknowledged before me by ______________ the ______________ of ______________ on behalf of said ______________

Before me personally came ______________ to me known, and known to me to be the individual who executed the foregoing Agreement, and acknowledged that he/she is the same.

______________________

Notary Public
Commission Expires ____________ (Affix Notary Seal)

---



EXHIBIT A

Name Jason R. Moody, Individually

By: [signature]

[redacted]

STATE OF: Georgia

COUNTY OF: Cherokee

On this 25th day of July, 2019 before me personally came Jason R. Moody to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he/she executed the same.

[signature]

Notary Public

Commission Expires 12/18/21

(Affix Notary Seal) JAVARRI KLINE NOTARY PUBLIC GEORGIA EXPIRES December 18, 2021 CHEROKEE COUNTY

---

Name Tara L. Moody, Individually

By: Tara L. Moody [signature]

[redacted]

STATE OF: Georgia

COUNTY OF: Cherokee

On this 25th day of July, 2019 before me personally came Tara L. Moody to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he/she executed the same.

[signature]

Notary Public

Commission Expires 12/18/21

(Affix Notary Seal) JAVARRI KLINE NOTARY PUBLIC GEORGIA EXPIRES December 18, 2021 CHEROKEE COUNTY

---

Name________________, Individually

By:________________

Address:________________

City: ________ State: ________ Zip: ________

SS#________________

STATE OF: ________________

COUNTY OF: ________________

On this________day of____________,________ before me personally came ________________ to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he/she executed the same.

________________

Notary Public

Commission Expires ________________ (Affix Notary Seal)

---

**EXHIBIT A**





Name______________________, Individually

By:______________________

Address:______________________

City: __________ State: ______ Zip: ______

SS# ______________________

STATE OF: ______________________

COUNTY OF: ______________________

On this_______day of____________,________ before me personally came ______________________ to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he/she executed the same.

______________________

Notary Public

Commission Expires ______________________ (Affix Notary Seal)

---

Name______________________, Individually

By:______________________

Address:______________________

City: __________ State: ______ Zip: ______

SS# ______________________

STATE OF: ______________________

COUNTY OF: ______________________

On this_______day of____________,________ before me personally came ______________________ to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he/she executed the same.

______________________

Notary Public

Commission Expires ______________________ (Affix Notary Seal)

---

Name______________________, Individually

By:______________________

Address:______________________

City: __________ State: ______ Zip: ______

SS# ______________________

STATE OF: ______________________

COUNTY OF: ______________________

On this_______day of____________,________ before me personally came ______________________ to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he/she executed the same.

______________________

Notary Public

Commission Expires ______________________ (Affix Notary Seal)

---



**EXHIBIT A**