# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re Search Warrant Seizure of Fulton County Voter Records | Case No. _____ |

### DECLARATION OF HELEN BUTLER

Pursuant to 28 U.S.C. § 1746, I, Helen Butler, hereby declare as follows:

    1.    I am a U.S. citizen, over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

    2.    I am a Georgia registered voter and identify as a Black female.

    3.    I am the Executive Director of the Georgia Coalition for the People's Agenda ("GCPA" or "People's Agenda"), and I have been in this role since March 2003.

    4.    GCPA is a Georgia not-for-profit corporation with its principal place of business located in Atlanta, Georgia.

    5.    GCPA is a non-partisan statewide coalition of more than 30 organizations, which collectively have more than 5,000 individual members across the state of Georgia. Among the 5,000 collective individual members of GCPA, there are individual members of the GCPA who are registered to vote in Georgia, including some members who are Fulton County registered voters.

    6.    The organization operates eight offices across the state: its main office in Atlanta, and additional offices in Athens, Augusta, Albany, Savannah, Macon, LaGrange, and our new office in Rome. Each office served roughly 10 to 12 surrounding counties on a regular basis. We

are a statewide coalition of civil rights, human rights, and peace and justice advocacy groups formed to improve the quality of governance in Georgia, to help create a more informed and active electorate and to have more responsive and accountable elected officials.

7. GCPA encourages voter registration and participation, particularly among Black and other underrepresented communities. GCPA's support of voting rights and access is central to its mission. The organization has historically committed, and ahead of the 2026 Midterm Election continues to commit, time and resources to conducting voter registration drivers, voter education, voter ID assistance, election protection, other get-out-the-vote efforts in Georgia, such as "Souls to the Polls," "Pews to the Polls," and other initiatives designed to encourage voter turnout. We also pursue impact litigation to protect Georgia voters. Through our voter empowerment programs, we seek to enhance voter registration and civic awareness and participation, particularly in communities of color and in youth and economically disadvantaged communities across Georgia. In that regard, we seek to provide accessible and convenient opportunities for people to register to vote, wherever they live and wherever they may be found. I have been actively involved in the planning and implementation of these activities for over 23 years.

8. To pursue our mission, we endeavor to train our staff on relevant federal and state rules concerning voter registration, including determining voter eligibility, properly completing registration materials, updating registration information, and complying with other requirements. We canvas door-to-door and attend community events to register voters and discuss with registered and eligible voters that voting is an important civic duty and responsibility. This is how we build trust.

9. As Executive Director for the GCPA, I work to manage our voter education, registration, and get-out-the-vote teams. I also work directly with constituents and members, speaking with them about their concerns. I am familiar with the various challenges that our members and constituents face in Georgia, including challenges related to voting rights, civil rights, individual privacy and safety, and attempts to purge Black voters.

10. GCPA has pursued impact litigation and defended the rights of Georgia voters for decades, including in the area of voter registration laws. *See generally Ass'n of Cmty. Orgs. for Reform Now v. Cox*, No. 1:06-cv-01891-JTC, 2006 WL 6866680 (N.D. Ga. Sept. 28, 2006) (granting preliminary injunction against rule prohibiting others to accept an unsealed voter registration application); *Ga. Coal. for the Peoples' Agenda v. Deal*, 214 F.Supp.3d 1344 (S.D. GA 2016) (granting preliminary injunction to extend voter registration deadline after hurricane evacuation); *Ga. Coal. for the Peoples' Agenda v. Raffensperger*, 346 F.Supp.3d 1251 (N.D. Ga.

2018) (granting preliminary injunction and limited relief for applicants in pending status due to inaccurate data matching protocols); *Finn v. Cobb County School Board*, No. 1:22-CV-2300-ELR, 2023 WL 9184893 (N.D. Ga. Dec. 14, 2023) (granting preliminary injunction in case alleging Cobb County school board districts were racial gerrymanders).

11. I understand that in December of 2025 the Department of Justice sued Brad Raffensperger, the Secretary of State of Georgia to obtain complete, unredacted voter registration data of all voters in the state, including their driver's license numbers and partial social security numbers. GCPA's members are among those registered voters who are impacted.

12. GCPA members and constituents feel intimidated by this type of federal government overreach into their sensitive personal information, as well as the attempt to compile a comprehensive database on them that links with their political affiliations and activities and all information they have submitted to any federal agency. Our members and constituents fear the misuse or weaponization of this data. These concerns have been communicated to me in recent months as we have seen the federal government improperly access and consolidate citizen data and reach into state election administration—including campaigning for partisan redistricting in Texas and elsewhere. Many members and constituents fear the impact on their right to vote and the expansion of targeted intimidation against people with whom the administration disagrees or who do not support a particular political party or politician. We have seen civil rights organizations and leaders, including those in racial justice and voter protection work, become targets as well.

13. I am concerned that the disclosure of the sensitive information requested in this manner is going to deter qualified voters from participating in our elections, or First Amendment activity more broadly. I believe this to be the case because the Department of Justice is not seeking to protect voters or investigate racial discrimination at all, but is instead furthering misinformation and disinformation in an effort to surveil and purge registered voters in circumventions of democratically derived state elections processes. The Memorandum of Understanding that the Department of Justice demanded Georgia officials sign confirms my belief, because the federal government seeks to require Georgia election officials to remove unilaterally identified voters from voter rolls within 45 days of "receiving notice from the Justice Department of any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns" related to those voters. Motion to Dismiss, Exh. A, *United States v. Raffensperger*, No. 5:25-cv-548 (M.D. Ga. Jan. 21, 2026), ECF 46-2 at 35.

14. The production of complete unredacted voter files to the Department of Justice will impact GCPA's mission, work, and resources. We will be forced to pivot our voter information

and registration activities to respond to the unprecedented and the growing fear and hesitancy of Georgia voters who should not be federally surveilled, sanctioned, or investigated simply for registering to vote. For these reasons we continue to oppose the Department of Justice's coercive actions here.

15. In addition to my concerns above, I recently learned that the federal government sought, obtained, and executed a search warrant to seize all records allegedly relating to violations under the Civil Rights Act of 1960, 52 U.S.C. § 20701, while a federal district court was itself reviewing the scope of protections and limitations applicable to impacted sensitive voter information. This search warrant includes electronic and physical versions of all voter rolls from the 2020 General Election in Fulton County. I understand that on that same day, the Federal Bureau of Investigation, with Director of National Intelligence Tulsi Gabbard present, searched the Fulton County Election Hub and Operation Center and seized election records, including ballots. *See* Janna Winter & Andrew Goudsward, *FBI searches Atlanta election office, chasing Trump 2020 vote fraud claims*, Reuters (Jan. 29, 2026), https://www.reuters.com/world/us/fbi-executing-search-warrant-election-office-georgia-related-2020-vote-fox-news-2026-01-28/. As Georgia's voter registration records are stored in the Georgia Registered Voter Information System ("GARVIS") which is a live database that is constantly updating, the search may have accessed and/or obtained the sensitive records at issue here.

16. Based upon my knowledge and experience as a former member of a Georgia County's Board of Elections, including during the 2020 election cycle, as well as my experience with the GCPA, I am aware that in addition to voter roll data which may have been seized in the course of the execution of the search warrant, voter data that was seized may have included voted, but still unsealed provisional ballots, which could potentially expose not only the identities of voters who cast provisional ballots, but potentially linking those voters to the actual ballots they cast, destroying those voters' right under the Georgia Constitution to the secrecy of their voted ballots.

17. The fact that a voter may not have taken steps to cure a provisional ballot does not necessarily mean that the voter was ineligible to cast the ballot. In my experience, eligible voters who may forget to bring HAVA ID as first time voters or one of the forms of acceptable photo ID with them to the polls, may not be able to return to their election office or send a copy of their ID to their election office within the three-day cure period following an election. As a result, the seizure of provisional ballot envelopes containing voted ballots poses a very serious risk that eligible voters' voted ballots will be linked back to them, destroying their constitutional right to the secrecy of their voted ballots.

18.  Additionally, when voters cast provisional ballots at the polls, they are required to complete the back side of the voter certificate form where there is a salmon-colored box in which provisional voters are asked to provide their Georgia driver's license number (if they have one) and date of issuance. If the voter certificates were seized, provisional voters' sensitive driver's license data could be exposed and potentially used for improper or illegal purposes, including identity theft. The seizure of voter information from Fulton County and the letter threatening ongoing state-sanctioned force unless voter data is released heighten my fears and the fears of GCPA members that the federal government is collecting voter data for improper purposes. These actions and the harmful impact they have on civic participation, voter trust, and the ability for us to do our core work lead us to strongly oppose the Department of Justice's coercive actions here.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __13th__ day of February, 2026

_____
Helen Butler