# Exhibit A



250 Massachusetts Ave NW, Suite 400 | Washington, DC 20001

September 22, 2025

**VIA ELECTRONIC MAIL AND OPEN RECORDS PORTAL**

Brad Raffensperger
Georgia Secretary of State
214 State Capitol
Atlanta, GA 30334
soscontact@sos.ga.gov

**Re: Public Records Request under the National Voter Registration Act and Georgia's Open Records Act**

Secretary Raffensperger,

      Black Voters Matter Fund, Communications Workers of America ("CWA") Local 3204, and CWA Local 3204 Retired Members Council submit this request for public records under the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501, *et seq*., and the Georgia Open Records Act ("GORA"), O.C.G.A. § 50-18-70, *et seq*., relating to your recent efforts to purge nearly 480,000 Georgia voters from state rolls.

      We request that responsive records are produced within three days of receipt of this letter to Branden Lewiston at blewiston@elias.law. We request that records are produced in native format when available. When not available in native format, we request that records are produced as machine-readable PDFs.

**I.       Background on Georgia voter purge**

      In a July 10, 2025 press release, you announced that your office was sending cancellation notices to 477,883 registered voters who your office contends have been in Inactive Status for the November 2022 and 2024 general elections.[1] You claimed that the cancellation program would be the "largest mailing of its kind" in eight years, which has generated public concern that the purge

---

[1] Secretary Raffensperger Continues Multi-Step List Maintenance Audit, Georgia Secretary of State's Office, July 10, 2025, https://sos.ga.gov/news/secretary-raffensperger-continues-multi-step-list-maintenance-audit.

may improperly remove eligible voters—particularly minority voters and voters who move frequently.[2]

According to the press release, voters subject to cancellation fall into four categories:

- 180,473 voters identified "as having moved out of state through Georgia's membership in the Electronic Registration Information Center" ("ERIC").

- 87,027 voters identified "as having filed a national change of address" ("NCOA") with the United States Postal Service.

- 105,848 voters identified "as having no contact with their elections office in 5 calendar years," meaning the voter "did not vote, submit an updated registration application, or have other activity with their elections office."

- 104,535 voters "identified because their local elections office received returned undeliverable mail when attempting to mail to the address on record."

You further claimed in the press release that "[i]n all cases, voters were sent a mailer when they went to Inactive status, and all records are being sent another mailer now informing them that they will be canceled if they do not respond." You said that voters mailed a notice will be given 40 days to respond by submitting an update through an online portal or returning a postcard included with the cancellation mailer. Your office also published a list of voters that would receive the cancellation mailing ("**Purge List**"). News reports indicate that your office recently canceled voter registrations of nearly 471,000 voters as a result of this purge.[3]

The information provided in the press release raises as many questions as it provides answers. To start, it is unclear when the voters were sent mailers or notices relating to their registration status, and the press release does not describe the contents of any mailers or notices. The press release also fails to explain your office's methodology for identifying voters to be sent

---

[2] *See, e.g.*, Thomas Wheatley, *Georgia to cut nearly 480,000 names from voter rolls*, AXIOS, July 11, 2025, https://www.axios.com/local/atlanta/2025/07/11/georgia-voter-roll-purge-2024-raffensperger; Christopher King, *Latest Georgia election roll purge targets nearly 478K inactive voters*, FOX5 ATLANTA, July 10, 2025, https://www.fox5atlanta.com/news/latest-georgia-election-roll-purge-targets-nearly-478k-inactive-voters.

[3] Rob DiRienzo, *Georgia finalizes cancelation of nearly 471,000 voter registrations*, FOX5 ATLANTA, August 22, 2025, https://www.fox5atlanta.com/news/georgia-finalizes-cancelation-voter-purge-registrations.

mailers or notices. For these reasons among others, additional clarity is required to ensure that this purge program does not improperly remove Georgia voters from the rolls.

## II.     Background on NVRA public records provision and GORA

Section 8 of the NVRA requires states to "make available for public inspection . . . *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added).

Courts construe "all records" broadly. *See, e.g., Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1336 (N.D. Ga. 2016); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 720 (S.D. Miss. 2014); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012). Such records include electronic information contained in a state's computerized voter registration databases. *Project Vote*, 208 F. Supp. 3d at 1336. It also includes but is not limited to "lists of the names and addresses of all persons to whom notices . . . are sent, and information concerning whether or not each such person has responded to the notice." 52 U.S.C. § 20507(i)(2).

Similarly, GORA provides that, subject to certain inapplicable exceptions, "all public records" are open to inspection. O.C.G.A. § 50–18–71(a). GORA contains a "strong presumption" of public access, *id.* at § 50–18–70(a); compliance is "not discretionary, but mandatory," *Griffin Indus., Inc. v. Georgia Dep't of Agric.*, 313 Ga. App. 69, 72, 720 S.E.2d 212, 215 (2011) (citation omitted).

Your failure to disclose the information requested would violate the NVRA and GORA and provide a cause of action to sue to compel compliance. 52 U.S.C. § 20510 (providing for private right of action under NVRA and for attorneys' fees for prevailing party); O.C.G.A. § 50–18–73 (similar for GORA).

## III.     Requests for records under the NVRA and GORA

In light of the gravity of your purge program—which has removed over 470,000 voters from the rolls, and which you described as the largest in eight years—we request that you and your agents produce records in response to the below requests within the next three days. Our requests are made under both the NVRA, 52 U.S.C. § 20507(i), and GORA, O.C.G.A. § 50-18-70, *et seq*.

Records to be produced:

1. For all voters on the Purge List, records sufficient to show the following information:

   a) Their date of birth;

b) The date on which they were sent an initial mailing or notice,[4] and the address to which it was sent;

c) The date on which they were sent any follow-up mailing or notice, and the address to which it was sent;

d) Whether they responded to any initial or follow-up mailing or notice, and if so, the date(s) and the substance of any such response;

e) Whether the mailing or notice issued to the voter was returned as undeliverable;

f) The last election in which they voted;

g) The last time they submitted or updated a voter registration application; and,

h) Whether their voter registrations have been canceled as a result of your office's recent purge and the basis for that cancellation.

2. A list of all voters who were sent mailings or notices in the past five years, including the following information:

a) Their name, date of birth, and residential and mailing addresses;

b) Their unique voter identification number;

c) The basis for which you sent them a mailing or notice (for instance, which of the four enumerated categories from your press release you believed the voter may fall into);

d) The date on which they were sent an initial mailing or notice, and the address to which it was sent;

e) The date on which they were sent any follow-up mailing or notice, and the address to which it was sent;

f) Whether they responded to any initial or follow-up mailing or notice, and if so, the date(s) and the substance of any such response;

g) The last election in which they voted; and,

h) The last time they submitted or updated a voter registration application.

---

[4] All references to "mailings" or "notices" in these requests refer to any notices sent under or relating to 52 U.S.C. § 20507(d)(2).

3.  Records sufficient to show the substance of all initial and follow-up mailings and notices to registered voters in the past five years;[5]

4.  All records reflecting your methodology in using cross-state data from ERIC to identify voters who may have moved out of state, including details about how you used such data to identify which registered voters would be sent mailings or notices and/or would be placed on the Purge List, and any reports, records, or data that you received from ERIC.

5.  All records reflecting your methodology in using NCOA data to identify voters who may have changed their addresses, including details about the data fields you used to match or compare NCOA data with Georgia's list of registered voters, and how you used such data to identify which registered voters would be sent mailings or notices and/or would be placed on the Purge List;

6.  All records reflecting your methodology in determining which voters had no contact with their election office for the last 5 calendar years; and,

7.  All records reflecting your methodology in determining which voters' local elections offices received returned undeliverable mail when attempting to mail to the address on record.

If fees for searching, compiling, or delivering these records exceed $1,000, please inform us before undertaking the expense; otherwise, please produce the records as soon as possible within three business days. *See* O.C.G.A. § 50-18-71(b)(1)(A).

If it will take longer than three business days to produce all responsive records, please promptly and also within three business days provide a time estimate for how long it will take to produce these records by electronic mail, and please produce responsive records on a rolling basis. *Id.*

If you deny any part of the request, please cite each specific exemption or exception on which you base your denial. *See* O.C.G.A. § 50-18-71(d). It is our preference to receive such records expeditiously, with only those redactions applied as are strictly required by law.

\* \* \*

---

[5] For avoidance of doubt, this request does not seek copies of every mailing sent to every voter, only copies sufficient to show the substance of what was communicated in those mailings or notices. To the extent different batches of mailings or notices contained different substantive messages, sufficient records should be produced to show that.

Respectfully,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Branden D. Lewiston
Marcos Mocine-McQueen
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
unkwonta@elias.law
blewiston@elias.law
mmcqueen@elias.law
Tel: (202) 968-4652

*s/ Adam M. Sparks*
Adam M. Sparks
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
Suite 3500, One Atlantic Center
Atlanta, GA 30309
Email: sparks@khlawfirm.com
Tel: (404) 888-9700

*Counsel for Black Voters Matter Fund,
CWA Local 3204, and CWA Local 3204
Retired Members Council*

cc:

Blake Evans
Elections Director
Georgia Secretary of State's Office
2 MLK Jr. Dr. S.E.
STE 802, Floyd W. Tower
Atlanta, GA 30334
elections@sos.ga.gov

Open Records Officer
Georgia Secretary of State's Office
2 MLK Jr. Dr. S.E.
STE 802, Floyd W. Tower
Atlanta, GA 30334
Submitted as attachment through Open Records Portal at:
*https://sosga.justfoia.com/Forms/Launch/d705cbd6-1396-49b7-939e-8d86c5a87deb*