**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MICHAEL RAINWATER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FIRST FINANCIAL ASSET MANAGEMENT INC, a Delaware Corporation; LEAP INSURANCE AGENCY LLC, a New Jersey Limited Liability Company,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Michael D. Rainwater, Plaintiff, and states the following Complaint against First Financial Asset Management Inc and Leap Insurance Agency LLC for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

## JURISDICTION AND VENUE

1. This action arises out of Defendants' illegal and improper efforts to collect a consumer debt, and includes violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (the "FDCPA").

2. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (Federal Question) and 15 U.S.C. § 1692k.

3. This Court has personal jurisdiction over Defendant First Financial Asset Management Inc because it is a Delaware corporation with its principal office in Norcross, Georgia, and it targeted Plaintiff — a Georgia resident — in the State of Georgia.

4. This Court has personal jurisdiction over Defendant Leap Insurance Agency LLC because Leap regularly transacts business in the State of Georgia, targeted Plaintiff — a Georgia resident — in the State of Georgia with collection communications sent from Leap directly to Plaintiff regarding an alleged debt that was allegedly incurred within the State of Georgia.

5. Venue is proper in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b) because Defendant First Financial Asset Management Inc resides in this District and the Atlanta Division, has a registered agent in this District and the Atlanta Division, a substantial part of the events giving rise to

the claim occurred in the State of Georgia, and both Defendants are subject to personal jurisdiction in this District and the State of Georgia.

**PARTIES**

6. Plaintiff Michael D. Rainwater is a natural person and a resident of the State of Georgia, and is a "consumer" under 15 U.S.C. § 1692a(3).

7. Defendant First Financial Asset Management Inc ("FFAM") is a Delaware corporation with its principal office at 3091 Governors Lake Drive, Suite 500, Norcross, Georgia 30071, and regularly attempts to collect debts asserted to be owed to third parties, including debts asserted to be owed to Leap Insurance Agency LLC.

8. Defendant Leap Insurance Agency LLC ("Leap") is a New Jersey limited liability company that regularly transacts business in the State of Georgia, including by entering into agreements with Georgia landlords and Georgia residents and citizens, as well as by placing accounts for collection with Georgia collection agencies (including FFAM), and by sending collection communications directly to Georgia consumers.

**DEBT-COLLECTOR STATUS**

9. FFAM is a debt collector.

10. FFAM regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another using the instrumentalities of interstate commerce, including the mails and the interstate telephone and email systems.

11. The principal purpose of FFAM's business is the collection of debts using the instrumentalities of interstate commerce.

12. FFAM is a "debt collector" within 15 U.S.C. § 1692a(6).

13. Leap is a debt collector.

14. Leap regularly attempts to collect debts alleged to be due to others.

15. One of the principal purposes of Leap's business is the collection of alleged debts.

16. In each of its three collection emails to Plaintiff dated May 21, May 23, and May 25, 2026, Leap represented in writing to Plaintiff: "This communication is from a debt collector attempting to collect a debt and any information will be used for that purpose."

17. Leap regularly attempts to collect, directly or indirectly, debts asserted to be owed to itself or to others using the instrumentalities of interstate commerce, including the mails and interstate email systems.

18. Leap allegedly acquired the alleged debt at issue after it was already in default from the perspective of the original creditor, The Reserve at Athens.

19. Leap is a “debt collector” within 15 U.S.C. § 1692a(6).

## THE ALLEGED DEBT

20. The alleged debt at issue in this action (the “Alleged Debt”) was allegedly incurred by Plaintiff in connection with a residential lease of Bedroom 818-B at The Reserve at Athens, 175 International Drive, Athens, Georgia 30605, under a Lease Takeover Addendum dated November 30, 2023 with a lease term of January 1, 2024 through July 20, 2024.

21. The Alleged Debt was incurred, or alleged to be incurred, primarily for personal, family, or household purposes — namely, residential housing.

22. The Alleged Debt is a “debt” within 15 U.S.C. § 1692a(5).

## FACTUAL ALLEGATIONS

23. Plaintiff is a natural person, and is not a corporation, limited liability company, or other legal entity.

24. Plaintiff leased Bedroom 818-B at The Reserve at Athens under a Lease Takeover Addendum dated November 30, 2023. The property is owned by PEP-UGA, LLC and managed by PEP-SH Management, LLC.

25. On May 9, 2024, PEP-SH Management, LLC’s community manager Monica Devlin issued a written Notice of Lease Violation and Immediate Termination

demanding that Plaintiff vacate the premises by the end of the day on May 10, 2024 — a one-day notice window.

26. The notice cited a criminal accusation lodged against Plaintiff by a leasing-office employee. That criminal accusation was dismissed by the Athens-Clarke County Solicitor-General on May 23, 2024.

27. Plaintiff vacated the premises on May 14, 2024 under duress.

28. Plaintiff, at all times, disputed the alleged lease violation and contends his landlord illegally evicted him in breach of the lease agreement.

29. Neither PEP-UGA, LLC nor PEP-SH Management, LLC sent Plaintiff a demand for payment of any alleged arrears at any time before pursuing collection through Leap.

30. Neither PEP-UGA, LLC nor PEP-SH Management, LLC provided Plaintiff an opportunity to cure any alleged arrears before pursuing collection through Leap.

31. Neither PEP-UGA, LLC nor PEP-SH Management, LLC gave Plaintiff notice of any assignment of the lease-related claim to Leap.

32. Leap paid The Reserve at Athens the sum of $643.00 in May-June 2024 on account of Plaintiff's alleged obligation.

33. Leap paid The Reserve at Athens the sum of $685.00 in July 2024 on account of Plaintiff's alleged obligation.

34. Leap's two payments to The Reserve total exactly $1,328.00 — the same amount later sought from Plaintiff.

35. On July 7, 2025, Leap placed the account with FFAM for collection.

36. After this placement, Plaintiff called FFAM to raise concerns about the account. FFAM forwarded those concerns to Leap.

37. On July 15, 2025, FFAM's Digital Collector Alan Pruett sent Plaintiff a Debt Validation Email from apruett@1fam.com (the "Validation Email").

38. The Validation Email demanded $1,328.00 from Plaintiff and identified Leap as the "client" that had placed the account with FFAM.

39. The Validation Email did not identify the original creditor of the Alleged Debt.

40. The Validation Email did not identify PEP-UGA, LLC, PEP-SH Management, LLC, or The Reserve at Athens as the creditor of any underlying obligation.

41. The Validation Email did not identify any instrument by which Leap acquired the right to collect the Alleged Debt from Plaintiff — no assignment, no subrogation instrument, no purchase agreement, no guaranty-enforcement instrument, no reimbursement instrument.

42. The Validation Email's attachments presented the Alleged Debt inconsistently. The Reserve at Athens Lease Agreement and Resident Ledger framed the Alleged Debt as unpaid rent under a residential lease. The LEAP-2725208

Insurance Program Declarations Page framed the Alleged Debt as arising under an insurance program. The Vitesse Snapsheets framed the Alleged Debt as a reimbursement or subrogated claim on payments Leap made to The Reserve. The Validation Email itself provided no single, coherent legal characterization of the Alleged Debt.

43. The Validation Email did not disclose that Leap Insurance Agency LLC had already paid The Reserve at Athens $1,328.00 on the same underlying obligation.

44. The Validation Email included the statutory mini-Miranda: "This communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose."

45. On July 15, 2025, Plaintiff responded to FFAM by email disputing the Alleged Debt and demanding a written accounting.

46. On July 15, 2025, Plaintiff sent a second email to FFAM expressly invoking his cease-and-desist rights under 15 U.S.C. § 1692c(c).

47. On July 16, 2025, Plaintiff sent FFAM a formal follow-up email reasserting the dispute and the cease-and-desist demand.

48. On July 16, 2025, FFAM forwarded Plaintiff's dispute to Leap for further review.

49. On July 17, 2025, Leap instructed FFAM to pause collection activity while Leap investigated.

50. On July 21, 2025, Plaintiff filed two complaints with the Consumer Financial Protection Bureau. Complaint #250721-22494826 was routed to FFAM. Complaint #250721-22495977 was referred to the Federal Trade Commission's Consumer Sentinel Network.

51. On July 24, 2025, FFAM filed a written response to CFPB Complaint #250721-22494826 in which it admitted, among other things: (a) Leap had placed the account with FFAM on July 7, 2025; (b) Plaintiff had disputed the account and demanded cease-and-desist; (c) FFAM had "placed Mr. Rainwater's account into a cease and desist status"; (d) FFAM had forwarded Plaintiff's complaint to Leap on July 16, 2025; and (e) Leap had instructed FFAM to "pause collection activity" on July 17, 2025.

52. None of FFAM's attempts to collect the Alleged Debt identified Leap as anything other than the original creditor, and none identified the original creditor on the face of the collection demands.

53. Plaintiff, and any consumer, would have had to sort through the validation documents from FFAM to even begin to understand Leap was not the original creditor, and even that was a confusing, misleading, and deceptive mess.

54. Leap had actual knowledge of Plaintiff's cease-and-desist demand no later than July 16, 2025, when FFAM forwarded Plaintiff's complaint to Leap, and confirmed that knowledge on July 17, 2025 by instructing FFAM to pause collection activity.

55. On May 21, 2026, Leap sent a collection email to Plaintiff from the address support@recovery-emails.leapeasy.com (the "May 21 Collection Email"). The May 21 Collection Email identified Rider ID LEAP-2725208 and Claim #008357, stated the "Total Indemnity Payment Amount" and outstanding balance as $1,328.00, set a "Payment Due Date" of June 20, 2026, characterized the transaction as an "indemnity payment" on a lease guaranty policy, provided a "Pay Now" link, and included the statutory mini-Miranda.

56. On May 23, 2026, Leap sent a second collection email to Plaintiff from the same address (the "May 23 Collection Email"). The May 23 Collection Email again demanded $1,328.00, again characterized the transaction as a "coverage obligation" that Leap had "fulfilled" on Plaintiff's behalf, again provided a "Pay Now" link, and again included the mini-Miranda.

57. On May 25, 2026, Leap sent a third collection email to Plaintiff from the same address (the "May 25 Collection Email"). The May 25 Collection Email again demanded $1,328.00, again characterized the transaction as a "claim" Leap had

"satisfied" on Plaintiff's behalf, again provided a "Pay Now" link, and again included the mini-Miranda.

58. The May 21, May 23, and May 25 collection emails (collectively, the "Post-C&D Collection Emails") occurred more than ten months after Plaintiff invoked cease-and-desist rights and after Leap had actual knowledge of that cease-and-desist demand.

59. None of the Post-C&D Collection Emails acknowledged Plaintiff's July 2025 cease-and-desist demand.

60. None of the Post-C&D Collection Emails acknowledged Leap's July 17, 2025 instruction to FFAM to pause collection activity.

61. None of the Post-C&D Collection Emails provided validation information required by 15 U.S.C. § 1692g(a).

62. None of the Post-C&D Collection Emails disclosed that Leap had already paid The Reserve at Athens $1,328.00 on the same underlying obligation.

63. None of the Post-C&D Collection Emails identified any assignment, purchase, subrogation, or other instrument by which Leap acquired the right to collect the Alleged Debt from Plaintiff.

## PLAINTIFF'S INJURIES

64. Plaintiff's injuries caused by Defendants' violations of the FDCPA are particular and concrete. They are legally cognizable injuries under the FDCPA. They invaded Plaintiff's legal rights — including his right to true and accurate information about debts asserted against him, his right to be free from unlawful collection communications, and his right to be treated fairly by debt collectors. They resulted in stress, anxiety, and emotional distress; lost time and resources responding to and disputing Defendants' unlawful collection communications; and legal fees and costs incurred in retaining counsel to defend against those communications.

65. Plaintiff incurred actual damages — including legal fees and costs of not less than $500.00, and garden-variety emotional distress — as a direct result of Defendants' FDCPA violations, which Plaintiff would not have suffered but for those violations.

## CAUSES OF ACTION

### ***Count 1*** *— Violations of the Fair Debt Collection Practices Act (against First Financial Asset Management Inc)*

66. Plaintiff re-alleges and incorporates paragraphs 1 through 65 as if fully set forth herein.

67. FFAM's July 15, 2025 Validation Email violated the FDCPA in the following ways.

68. FFAM falsely represented the character, amount, and legal status of the Alleged Debt by demanding $1,328.00 when Leap had already paid The Reserve at Athens exactly $1,328.00 on the same underlying obligation — a fact documented in the Vitesse Snapsheets FFAM itself attached to the Validation Email, and this violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.

69. FFAM attempted to collect an amount not permitted by law or by the agreement creating the Alleged Debt by seeking $1,328.00 that had already been satisfied by Leap's payments to The Reserve, and this violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.

70. FFAM used false, deceptive, or misleading representations or means in connection with the collection of the Alleged Debt by presenting the Alleged Debt with a mixed and incoherent legal characterization — alternately framed as unpaid rent under a residential lease, an insurance-program obligation, and a reimbursement or subrogated claim — without disclosing which theory applied, without disclosing that Leap had already been paid, and without disclosing

whether Leap had acquired any right to collect the Alleged Debt. This violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

71. FFAM failed to provide the validation information required by the FDCPA, including (i) failing to identify the correct amount of the Alleged Debt; and (ii) failing to identify the original creditor of the Alleged Debt, instead identifying only "Leap Insurance Agency LLC" as its "client" without disclosing PEP-UGA, LLC, PEP-SH Management, LLC, or The Reserve at Athens as the creditor of any underlying obligation. This violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

72. FFAM falsely represented, or misleadingly implied, that Leap Insurance Agency LLC held the legal right to collect the Alleged Debt from Plaintiff when FFAM's own document productions to Plaintiff and to the Consumer Financial Protection Bureau contained no assignment, subrogation, purchase, guaranty-enforcement, or reimbursement instrument by which Leap acquired that right, and this violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

73. As a direct result of FFAM's FDCPA violations, Plaintiff has suffered emotional distress and has incurred legal costs and fees to hire counsel to investigate these

claims, and defend him regarding these claims, as a direct result of FFAM's improper collection efforts.

74. FFAM's violations of the FDCPA make FFAM liable to Plaintiff for actual damages, statutory damages of up to $1,000, and reasonable costs and attorneys' fees, in accordance with 15 U.S.C. § 1692k(a)(2)–(3).

***Count 2** — Violations of the Fair Debt Collection Practices Act (against Leap Insurance Agency LLC)*

75. Plaintiff re-alleges and incorporates paragraphs 1 through 65 as if fully set forth herein.

76. Leap had actual knowledge, no later than July 16, 2025, that Plaintiff had invoked his cease-and-desist rights under 15 U.S.C. § 1692c(c), and Leap acted on that knowledge on July 17, 2025, by instructing FFAM to pause collection activity.

77. On May 21, 2026, Leap sent the May 21 Collection Email to Plaintiff, communicating with Plaintiff in connection with the collection of the Alleged Debt after Plaintiff had invoked § 1692c(c) and after Leap had actual knowledge of that invocation. That communication violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*.

78. On May 23, 2026, Leap sent the May 23 Collection Email to Plaintiff in the same posture, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

79. On May 25, 2026, Leap sent the May 25 Collection Email to Plaintiff in the same posture, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

80. Each of the Post-C&D Collection Emails is a separate violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*

81. Each of the Post-C&D Collection Emails falsely represented the character, amount, and legal status of the Alleged Debt, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, by (i) characterizing the Alleged Debt as an "indemnity payment," "coverage obligation," or satisfied "claim" — insurance-industry framing that the Reserve at Athens Lease Agreement itself refutes by identifying Leap as a "third-party cosigning partner" / "Institutional Cosigner"; (ii) demanding $1,328.00 without disclosing that Leap had already been paid the same amount by the underlying transaction; and (iii) failing to identify any instrument by which Leap acquired the legal right to collect the Alleged Debt from Plaintiff.

82. Each of the Post-C&D Collection Emails used false, deceptive, or misleading representations or means in connection with the collection of the Alleged Debt, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, by presenting a self-serving characterization of Leap's role — as an insurer that had fulfilled a "coverage obligation" — that is inconsistent with the Lease Agreement's identification of Leap as a cosigner and inconsistent with Leap's own July 2025 conduct in placing the account with FFAM for third-party collection.

83. Each of the Post-C&D Collection Emails attempted to collect an amount not permitted by law or by the agreement creating the debt, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, by seeking $1,328.00 that had already been satisfied by Leap's own payments to The Reserve.

84. Leap failed to provide the validation information required by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* in each of the Post-C&D Collection Emails.

85. As a direct result of Leap's FDCPA violations, Plaintiff has suffered emotional distress and has incurred legal costs and fees to hire counsel to investigate, and defend efforts to collect, the Alleged Debt as a direct result of Leap's improper collection efforts.

86. Leap's violations of the FDCPA make Leap liable to Plaintiff for actual damages, statutory damages of up to $1,000, and reasonable costs and attorneys' fees, in accordance with 15 U.S.C. § 1692k(a)(2)–(3).

**JURY DEMAND**

87. Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE,** Plaintiff prays that this Court:

(1) Find Defendant First Financial Asset Management Inc liable for violations of the FDCPA;

(2) Find Defendant Leap Insurance Agency LLC liable for violations of the FDCPA;

(3) Award Plaintiff statutory damages of $1,000 against Defendant First Financial Asset Management Inc under 15 U.S.C. § 1692k(a)(2)(A);

(4) Award Plaintiff statutory damages of $1,000 against Defendant Leap Insurance Agency LLC under 15 U.S.C. § 1692k(a)(2)(A);

(5) Award Plaintiff actual damages in an amount to be shown with more particularity at a later date;

(6) Award Plaintiff reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3);

(7) Award the reasonable costs of this action and other expenses of litigation; and

(8) Grant Plaintiff such other and additional relief as the Court deems just and equitable.

Respectfully submitted this 15 July 2026.

*/s/ John William* Nelson
John William Nelson
Georgia Bar No. 920108
john@nelsonchambers.com

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph. 404.348.4462
Fax. 404.549.6765

ATTORNEY FOR PLAINTIFF

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, Plaintiff MICHAEL RAINWATER verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 

07 / 15 / 2026

Signature



Doc ID: 09f0ce0bffad554db04ab4d2bc1baa7120e4bea6

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B). The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14-point font.

**DATED:** 15 July 2026

/s/ John William Nelson
John William Nelson
Georgia Bar No. 920108

*Attorney for Plaintiff*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph. 404.348.4462
Fax. 404.549.6765